01

02

03

04

05

06                          UNITED STATES DISTRICT COURT
                           WESTERN DISTRICT OF WASHINGTON
07                                    AT SEATTLE

08  JOSEPH GUAY,                          )    CASE NO. C06-1276-TSZ
                                          )
09          Plaintiff,                    )
                                          )
10      v.                                )
                                          )    REPORT AND RECOMMENDATION
11  MICHAEL J. ASTRUE,                    )    RE: SOCIAL SECURITY
    Commissioner of Social Security,      )    DISABILITY APPEAL
12                                        )
            Defendant.                    )
13  _____ )

14          Plaintiff Joseph Guay proceeds through counsel in his appeal of a final decision of the

15  Commissioner of the Social Security Administration (Commissioner).  The Commissioner denied

16  plaintiff's applications for Disability Insurance (DI) and Supplemental Security Income (SSI)

17  benefits after a hearing before an Administrative Law Judge (ALJ).

18          Having considered the ALJ's decision, the administrative record (AR), and all memoranda

19  of record, it is recommended that the Commissioner be AFFIRMED.

20  / / /

21  / / /

22  / / /

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

01 **FACTS AND PROCEDURAL HISTORY**

02        Plaintiff was born on XXXX, 1955.[1] He completed the tenth grade of high school.  Plaintiff

03 previously worked as a janitor and housecleaner.

04        With a protective filing date in October 2000, plaintiff filed applications for DI and SSI

05 benefits, alleging disability since October 6, 2000.  (AR 86-89, 363-66.)  His complaints included

06 back pain, manic depression, and suicidal thoughts.  (AR 119.)  His applications were denied at

07 the initial level and on reconsideration, and he timely requested a hearing.

08        ALJ Arthur Joyner held a hearing on May 5, 2003 and issued a decision unfavorable to

09 plaintiff on October 2, 2003.  (AR 390-400.)  Plaintiff appealed and, because the recording of the

10 ALJ's hearing could not be located, the Appeals Council remanded the matter for an additional

11 hearing.  (416-17.)

12        ALJ M.J. Adams held a second hearing on December 19, 2005, taking testimony from

13 plaintiff.  (AR 671-92.)  On February 4, 2006, ALJ Adams issued a decision finding plaintiff not

14 disabled.  (AR 21-31.)

15        Plaintiff timely appealed.  The Appeals Council denied plaintiff's request for review on

16 August 25, 2006, making the ALJ's decision the final decision of the Commissioner.  (AR 11-14.)

17 Plaintiff appealed this final decision of the Commissioner to this Court.

18 **JURISDICTION**

19        The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

20 _____

21        [1] Plaintiff's date of birth is redacted back to the year of birth in accordance with the
   General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the
22 official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -2

01

## DISCUSSION

02        The Commissioner follows a five-step sequential evaluation process for determining

03 whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must

04 be determined whether the claimant is gainfully employed.  The ALJ found plaintiff had not

05 engaged in substantial gainful activity since his alleged onset date.  At step two, it must be

06 determined whether a claimant suffers from a severe impairment.  The ALJ found plaintiff's manic

07 depression and degenerative disc disease severe.  Step three asks whether a claimant's impairments

08 meet or equal a listed impairment.  The ALJ found that plaintiff's impairments did not meet or

09 equal the criteria for any listed impairment.  If a claimant's impairments do not meet or equal a

10 listing, the Commissioner must assess residual functional capacity (RFC) and determine at step

11 four whether the claimant has demonstrated an inability to perform past relevant work.  The ALJ

12 assessed plaintiff's RFC and found him unable to perform his past relevant work.  If a claimant

13 demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner

14 to demonstrate at step five that the claimant retains the capacity to make an adjustment to work

15 that exists in significant levels in the national economy.  Applying the Medical-Vocational

16 Guidelines, the ALJ found plaintiff capable of making an adjustment to work existing in significant

17 numbers in the national or regional economy.

18        This Court's review of the ALJ's decision is limited to whether the decision is in

19 accordance with the law and the findings supported by substantial evidence in the record as a

20 whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence means more

21 than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable

22 mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881 F.2d 747, 750

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -3

01   (9th Cir. 1989).  If there is more than one rational interpretation, one of which supports the ALJ's

02   decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.

03   2002).

04          Plaintiff asserts that the ALJ erred  in failing to consider his leg impairments at step two

05   and beyond.  He avers that the ALJ failed to provide sufficient reasons for rejecting the opinions

06   of examining physician Dr. Brian Buchea, treating physician Dr. Greg Stern, and nurse practitioner

07   Melinda Werny, and impermissibly based his decision on speculation as to plaintiff's activities.

08   Plaintiff further argues that the ALJ erred in failing to consider his physical impairments under the

09   listings, either individually or in combination with his mental impairments.  Finally, he argues that

10   the ALJ erred in relying solely on the Medical-Vocational Guidelines given his combination of

11   severe mental and physical impairments, resulting in exertional and non-exertional limitations.  He

12   requests remand for an award of benefits or, alternatively, for further administrative proceedings.

13          Defendant argues that the ALJ's decision is supported by substantial evidence and should

14   be affirmed.  For the reasons described below, the undersigned agrees that the Commissioner's

15   decision should be affirmed.

16                                              Step Two

17          At step two, a claimant must make a threshold showing that his medically determinable

18   impairments significantly limit his ability to perform basic work activities. *See Bowen v. Yuckert*,

19   482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c).  "Basic work activities"

20   refers to "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b),

21   416.921(b).  "An impairment or combination of impairments can be found 'not severe' only if the

22   evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -4

01  ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting Social Security

02  Ruling (SSR) 85-28).   "[T]he step two inquiry is a de minimis screening device to dispose of

03  groundless claims."  *Id*. (citing *Bowen*, 482 U.S. at 153-54).   An ALJ is also required to consider

04  the "combined effect" of an individual's impairments in considering severity.  *Id*.

05      As indicated above, the ALJ found only plaintiff's manic depression and degenerative disc

06  disease severe at step two.  (AR 24.)  She further found as follows:

07      Other symptoms and complaints appear in the record from time to time, but these
        were mild or transient conditions that did not cause significant limitations in the
08      claimant's ability to function.  Among these is the claimant's diagnosis of significant
        stenosis in the right common iliac.  The claimant was not limited by this condition; on
09      the contrary, his doctor recommended exercise to treat the condition. I therefore find
        that this and other such mild or transient impairments are not severe under the
10      regulations.

11  (*Id*. (internal citations to record omitted.))

12      Plaintiff argues that the ALJ overlooked at step two, and consequently at all subsequent

13  steps, his intermittent claudication, a condition resulting from his stenosis of the right common

14  iliac artery, and sciatica.  He asserts that the claudication causes limping and limits his ability to

15  walk without pain for long periods without rest.  (*See* AR 267, 337, 350-51, 494-95.)  He rejects

16  the ALJ's description of this condition as transitory and/or remedied by exercise.  (*See*, *e.g.*, AR

17  350 (in December 2002 plaintiff reported one to two year history of right buttock pain with

18  walking or bike riding); AR 336-37 (January 2003 testing showed right hip pain after four minutes

19  of walking); AR 468-69 (Dr. Stern continued to diagnosis peripheral vascular disease in January

20  2005 and, in February 2005, found: "Hyperlipidemia incompletely controlled with history of

21  peripheral vascular disease.")) Plaintiff also points to evidence in the record as to his right and left

22  leg sciatica, including Dr. Stern's December 2005 notation: "Patient has chronic low back pain

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -5

01   with right sciatica exacerbated by overuse.  Condition requires restriction of lifting and bending

02   and he gets flares with exceeding his limits requiring further restriction of activities and slowed

03   pace of work." (AR 449.)

04        The Commissioner argues that the ALJ properly found these impairments not severe,

05   relying on medical reports from Drs. Stern, Buchea, and James Damon, which failed to show any

06   objective evidence of associated work-related limitations.  (*See* AR 197-98, 267, 311-12.)  The

07   Commissioner further posits that, even accepting these impairments as severe, any error was

08   harmless in that there was no credible evidence they limited plaintiff's functioning to any greater

09   degree than that assessed in the ALJ's RFC assessment.  (*See* AR 27 (finding plaintiff "able to lift

10   and/or carry 20 pounds occasionally, and 10 pounds frequently; to sit and to stand and/or walk

11   intermittently for a total of six hours in an eight hour workday; with no limitations with regard to

12   pushing or pulling the above amounts."; concluding these limitations allowed plaintiff to perform

13   "'light' work[.]"))

14        The ALJ's step two finding withstands scrutiny.  The ALJ lumped plaintiff's "other

15   symptoms and complaints" together and concluded "these mild or transient conditions . . . did not

16   cause significant limitations in the claimant's ability to function."  (AR 24.)  It cannot be said that

17   the ALJ erred in deciding to name only plaintiff's stenosis in the right common iliac as an example

18   and, if anything, this example was inclusive of the resulting intermittent claudication.  Further,

19   although the ALJ does not neatly tie this step two finding to her credibility assessment and

20   assessment of the opinions of physicians at step four, these assessments do provide sufficient

21   support for her conclusions at step two.  As discussed further below, the ALJ provided numerous

22   references to the record in concluding plaintiff's activities – including various types of farm work

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -6

01  – showed him "capable of performing at a considerably higher level than he alleges."  (AR 26.)

02  This finding supports the ALJ's conclusion that, despite the diagnoses and the supporting medical

03  evidence in the record pointed to by plaintiff, plaintiff's "other" impairments did not cause

04  significant limitations in his ability to perform basic work activities.   Likewise, the ALJ's

05  assessment of physicians' opinions at step four, as also discussed further below, lends additional

06  support for her conclusion that these conditions were not severe.  (*See* AR 27-28 (finding that,

07  for example, Dr. Buchea's sitting, standing, and walking limitations were contradicted by

08  plaintiff's activities.))   Finally, in failing to demonstrate error at step two, plaintiff fails to

09  demonstrate that the ALJ's step two decision implicates the remaining steps in the sequential

10  evaluation process.

11                                    Physicians' Opinions

12           In general, more weight should be given to the opinion of a treating physician than to a

13  non-treating physician, and more weight to the opinion of an examining physician than to a non-

14  examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Where not contradicted

15  by another physician, a treating or examining physician's opinion may be rejected only for "'clear

16  and convincing'" reasons.  *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).

17  Where contradicted, a treating or examining physician's opinion may not be rejected without

18  "'specific and legitimate reasons' supported by substantial evidence in the record for so doing."

19  *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).  Where the opinion

20  of the treating physician is contradicted, and the non-treating physician's opinion is based on

21  independent clinical findings that differ from those of the treating physician, the opinion of the

22  non-treating physician may itself constitute substantial evidence. *See Andrews v. Shalala*, 53 F.3d

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -7

01  1035, 1041 (9th Cir. 1995).  It is the sole province of the ALJ to resolve this conflict.  *Id.*

02  A.      Examining Physician Dr. Buchea

03          Plaintiff maintains the ALJ failed to provide sufficient reasons for rejecting examining

04  physician Dr. Buchea's opinion limiting him to no more than thirty minutes of standing and ten

05  minutes of walking or sitting at a time.  ( *See* AR 200.)   While the ALJ agreed with lifting

06  limitations assessed by Dr. Buchea, he rejected the sitting, standing, and walking limitations upon

07  concluding that plaintiff's activities – including "working on a farm, unloading hay, feeding and

08  washing animals, riding a bike" – show him capable of doing these activities for longer than found

09  by Dr. Buchea.  (AR 28.)   Plaintiff argues that the ALJ impermissibly rejected Dr. Buchea's

10  opinions based on speculation about the extent of his activities.  He notes that, despite references

11  in the record to his "bike riding[]" (AR 350), "taking care of numerous animals including

12  livestock[]" (AR 312), "helping friends unload hay from a wagon" (AR 480), and "washing

13  dogs[]" (AR 466), the record lacks any detail as to the time and effort he actually expended

14  performing these activities.  He points to his testimony at the hearing that he never did any kind

15  of actual farm work, including "bucking hay." (AR 681.)  (*See also* AR 196 (January 2001 Dr.

16  Buchea report:  "Patient lives with a friend on a farm.  The only activity he does besides lying

17  around in a hospital bed, which he has in his room, is feed the chickens with some bread crumbs.

18  This is only occasionally."))

19          Defendant argues that the record disproves plaintiff's testimony, drawing in large part on

20  the ALJ's credibility finding:

21          For the bulk of the time at issue in this decision, the claimant lived with a friend on a
            farm.  He claimed in January of 2001 that he did little on the farm but feed the
22          chickens on an occasional basis.  Ex. 4F/1.  But elsewhere in the record the claimant

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -8

01    reported on a consistent basis that he performed significant work on the farm. *See*
02    *e.g.* Ex 12F/18 (reference to farm work in August of 2001); 12F/13 (reporting that
     he got a lot of exercise from work on farm in September of 2001); 28 F/44
03    ("continues to do light duty farm work" in June of 2003); 28F/26 (helped friends
     unload hay in July of 2004); Ex. 29F/65 (farm work keeps him "out of trouble" in
04    October of 2004); 29F/46 ("working on the farm a lot" in March of 2005); 28F/9
     (moving a lot of things around on the farm in May of 2005); 29F/8 (still working on
05    the farm in November of 2005). In March of 2002, the claimant admitted that he took
     care of numerous animals, including livestock, on the farm (or ranch). Ex 13F/2. In
06    January of 2003, the claimant reported that he experienced pain with bike riding. Ex
     23F/7. In March of 2005, the claimant made reference to washing dogs. Ex 28F/12.
07    These activities show that the claimant is capable of performing at a considerably
     higher level than he alleges.

08 (AR 26.) (*See also* AR 26-27 (also pointing to inconsistent reports regarding alcohol use and

09 treatment and complaints of hallucinations as casting doubt on plaintiff's credibility.)) Defendant

10 avers that plaintiff's activities are relevant, not necessarily in indicating plaintiff's ability to work

11 on a sustained basis, but to the extent they bear on his believability. Defendant further asserts that

12 the ALJ appropriately considered activities conflicting with Dr. Buchea's assessment in

13 determining the weight to afford this physician's opinions. *See Webb v. Barnhart*, 433 F.3d 683,

14 688 (9th Cir. 2005) ("Credibility determinations do bear on evaluations of medical evidence when

15 an ALJ is presented with conflicting medical opinions or inconsistency between a claimant's

16 subjective complaints and his diagnosed conditions."); *Morgan v. Commissioner of the Social Sec.*

17 *Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999) (comparing physician's opinions with contrary

18 evidence of the claimant's abilities in the record).

19       The record in this case contained and the ALJ relied upon medical opinions contradictory

20 to those of Dr. Buchea. (*See* AR 27-28, 204-09, 311-12.) Therefore, the ALJ needed to supply

21 only specific and legitimate reasons for rejecting this examining physician's opinions. As argued

22 by defendant, the ALJ appropriately pointed to the contradictory evidence in the record as to

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -9

01  plaintiff's activities in rejecting Dr. Buchea's opinions in part.  Contrary to plaintiff's contention,

02  the record contained sufficient detail as to those activities.  Indeed, the sheer number of references

03  to plaintiff's work on the farm raises serious doubt as to his contention that he never actually

04  performed any real work.[2]

05  B.    Treating Physician Dr. Stern

06         Plaintiff also argues that the ALJ failed to provide sufficient reasons for rejecting the

07  opinions of treating physician Dr. Stern as to his physical limitations, including the need for slowed

08  pace and bending limitations, as well as frequent problems with concentration due to chronic pain.

09  (See AR 449.)  Dr. Stern included these limitations on a December 2005 report.  (Id.)  The ALJ

10  found the lifting restriction in the RFC supported by Dr. Stern's December 2005 report and

11  pointed to Dr. Stern's August 2001 examination as demonstrating "the lack of physical signs of

12  decreased functioning in the record."  (AR 28.)  However, she did not mention the other

13  limitations identified in the December 2005 report and later stated: "There are no further opinions

14  regarding the claimant's functioning." (AR 29.)

15         The ALJ's failure to specifically address all of the limitations assessed by Dr. Stern is

16

17         [2] Plaintiff did not directly challenge the ALJ's credibility assessment in his opening brief.

18  (See Dkt. 18.)  In reply, he posited that the ALJ's alleged step two errors necessarily implicate the
    credibility decision, particularly with respect to his complaints of leg pain and standing or walking
    limitations.  As described above, plaintiff fails to demonstrate any error at step two.  Moreover,

19  even if plaintiff intended to challenge the ALJ's credibility finding, the ALJ, as required by law,
    provided clear and convincing reasons to reject plaintiff's testimony.  Vertigan v. Halter, 260 F.3d

20  1044, 1049 (9th Cir. 2001).  See also Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir.
    1997) ("In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness,

21  inconsistencies either in his testimony or between his testimony and his conduct, his daily activities,
    his work record, and testimony from physicians and third parties concerning the nature, severity,

22  and effect of the symptoms of which he complains.")

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -10

01 troubling, particularly given his status as a treating physician.  However, reading the decision as

02 a whole, the ALJ both directly and indirectly provided sufficient reasons for rejecting any

03 limitations beyond those included in the RFC assessment.  Again, the ALJ needed only to provide

04 specific and legitimate reasons given that the record contains medical opinions contradictory to

05 Dr. Stern.  (*See* AR 27-28, 204-09, 210-13, 311-12, 355-57.)

06        Immediately following the ALJ's adoption of Dr. Stern's lifting restriction, the ALJ stated:

07        I also base my findings in large part on the lack of physical signs of decreased
          functioning in the record.  For example, when examined by Greg Stern, M.D., in
08        August of 2001, the claimant was able to walk on heel and toes.  Trendelenburg was
          negative.  Straight leg raise was negative in the sitting and supine positions.  Dr. Stern
09        assessed chronic low back pain with symptoms of right sciatica, but found no
          evidence of radiculopathy.  In March of 2002, the claimant was noted to walk with
10        a normal gait, with a normal erect posture.  He was able to heel walk, toe walk, squat
          down and return from squatting position, and tandem gait.  He was able to hop twice
11        on either foot with no significant complaints.  He was able to get on and off the
          examining table without assistance.  Straight leg testing was negative to 90 degrees
12        seated and 50 degrees when recumbent.  Examining physician James E. Damon,
          M.D., found chronic low back strain with no significant objective findings on physical
13        examination.  He found no work precautions or limitations.

14 (AR 28 (internal citations to record omitted.))  Also, as stated above, the ALJ's credibility and

15 RFC assessments described in detail activities contradicting the existence of additional physical

16 limitations.  (*See* AR 26-28.)

17        Additionally, with respect to concentration and pace, the ALJ stated at step three:

18        Regarding the claimant's concentration, persistence, or pace, [plaintiff] reported in
          May of 2003 that he liked to read.  On examination with Dr. Parlatore that month, the
19        claimant was able to remember 3 of 4 objects, spell the word "world" correctly both
          forward and backward, do serial 7s, follow a 3-step command, follow the
20        conversation, discuss current events, and remember all living presidents.

21 (AR 25 (internal citations to record omitted.))  She also later, at step four, cited to Dr. Anselm

22 Parlatore's May 2003 evaluation as finding no other limitations beyond slight limitations in

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -11

01   plaintiff's ability to respond appropriately to work pressures or changes.  (AR 28.)

02        In sum, while the ALJ arguably should have specifically recounted and discussed all of the

03   limitations assessed by Dr. Stern, she ultimately provided specific and legitimate reasons for

04   rejecting Dr. Stern's opinions as to those limitations.

05                                   <u>Nurse Practitioner</u>

06        Nurse practitioner Melinda Werny is not an "acceptable medical source" under Social

07   Security regulations.  *See* 20 C.F.R. §§ 404.1513, 416.913.  As such, her opinions must be given

08   the weight of lay evidence.  The Ninth Circuit has held that "lay testimony as to a claimant's

09   symptoms is competent evidence that an ALJ must take into account, unless he or she expressly

10   determines to disregard such testimony and gives reasons germane to each witness for doing so."

11   *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

12        The ALJ gave little weight to Werny's opinions.  (AR 25, 28-29.)  At step three, she noted

13   that Werny's assessment of marked limitations of functioning conflicted with the evidence in the

14   record showing plaintiff could function at a much higher level:

15        For example, regarding his activities of daily living, the record contains frequent
          references to the claimant's work on a farm.  In May of 2003, the claimant told Dr.
16        Parlatore that he did his own cooking and cleaning.  Socially, the claimant lives with
          friends on the farm, and the record contains no evidence that he does not get along
17        with them.  In May of 2003, the claimant reported that he attended church.  In March
          of 2005, the claimant reported that he got along well with his "co-workers" on the
18        farm.  In June of 2005, the claimant reported that he had had a "great visit" to Florida,
          seeing his children and "good friends."  Regarding the claimant's concentration,
19        persistence, or pace, [plaintiff] reported in May of 2003 that he liked to read.  On
          examination with Dr. Parlatore that month, the claimant was able to remember 3 of
20        4 objects, spell the word "world" correctly both forward and backward, do serial 7s,
          follow a 3-step command, follow the conversation, discuss current events, and
21        remember all living presidents.

22

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -12

01  (AR 25 (internal citations to record omitted.)) The ALJ also found no evidence Werny understood

02  the meaning of the terms as used on the Psychiatric Review Technique Forms (PRTF) she filled

03  out.  (*Id*.) Further, at step four, the ALJ stated:

04      My assessment disagrees, however, with the several forms completed by the
        claimant's nurse practitioner for this agency and for the Department of Social and
05      Health Services (DSHS), in connection with his General Assistance claim with that
        agency.  The first of these forms was completed in January of 2001; the last was
06      completed in December of 2005.  I give the opinions of this source less weight than
        Drs. Parlatore and Suh for two reasons.  First, the improvement in the claimant's
07      symptoms and functioning, which began in July of 2003, is not reflected in nurse
        practitioner Werny's assessments, which are virtually unchanged from the time when
08      she first started seeing the claimant in 2001 to 2005.  *See e.g.* Ex. 29F/65 (in October
        of 2004, claimant quoted as saying "no depression, feeling good.  Working at the farm
09      keeps me out of trouble.).  Nurse Werny mentioned "psychotic symptoms" in August
        and December of 2005, but chart notes from that period say that the claimant's
10      auditory hallucinations had diminished considerably and were described as "minimal."
        As noted above, nurse practitioner Werny consistently noted auditory hallucinations,
11      but at the hearing, the claimant described visual hallucinations.  Drs. Suh and
        Parlatore found no evidence of manic or psychotic symptoms in the claimant's history
12      or presentation, yet nurse practitioner Werny consistently assessed bipolar disorder
        and auditory hallucinations.  Because her assessments are not consistent with the bulk
13      of the medical evidence of record, I give them little weight.  *See* 20 C.F.R. §§
        404.1527(d)(4), 416.927(d)(4) (explaining that the more consistent an opinion is with
14      the record as a whole, the more weight it is given).

15  (AR 28-29 (some internal citations to record omitted.))

16      Plaintiff argues that his reported activities are not a legitimate basis for rejecting the

17  opinions of Werny, who served as his mental health provider for a number of years.  He further

18  suggests an absence of evidence that Werny did not understand the meanings of the terms in the

19  PRTF, noting that the forms include definitions of the pertinent terms.

20      However, it is clear from the above that the ALJ provided sufficient germane reasons for

21  finding Werny's opinions entitled to little weight.  The ALJ's decision on this point is supported

22  by substantial evidence and should be upheld.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -13

01                                  <u>Step Three</u>

02          At step three, the ALJ must consider whether the claimant's impairments meet or equal

03   one of the impairments in the "Listing of Impairments" set forth in Appendix 1 to 20 C.F.R. Part

04   404, Subpart P.  "In evaluating a claimant with more than one impairment, the Commissioner must

05   consider 'whether the combination of your impairments is medically equal to any listed

06   impairment.'"  *Lester*, 81 F.3d at 829.  Plaintiff bears the burden of proving the existence of

07   impairments meeting or equaling a listing.  *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

08          In this case, the ALJ discussed plaintiff's mental impairment in detail at step three.  (*See*

09   AR 25.)  She concluded "that the claimant's mental health impairment does not meet listing 12.04

10   [affective disorder.]" (*Id*.)  The ALJ subsequently stated: "I further find that none of the claimant's

11   other impairments meets or equals the criteria of any impairment included in the Listings of

12   Impairments." (*Id*.)

13          Plaintiff argues that the ALJ erred in considering his manic depression in isolation, without

14   consideration of the combined impact of this condition with his chronic pain and its effect on his

15   activities of daily living and concentration, persistence, and pace.  He points, in particular, to the

16   limitations assessed by Dr. Stern in December 2005.  (*See* AR 449.)  Plaintiff further argues that

17   the ALJ failed to properly consider any of his physical or mental impairments in combination at

18   step three, pointing to his degenerative disc disease, sciatica, and peripheral vascular disease

19   causing intermittent claudication.  He describes the ALJ's final conclusion that none of his other

20   impairments meets or equals a listing as a boilerplate statement.

21          As argued by the Commissioner, plaintiff fails to demonstrate error at step three.  "The

22   mere diagnosis of an impairment listed in Appendix 1 is not sufficient to sustain a finding of

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -14

01  disability. . . . [An impairment] must also have the *findings* shown in the Listing of that

02  impairment."  *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985) (emphasis in original).

03  Here, plaintiff fails to demonstrate that he met a listing, either individually or in combination.  As

04  discussed above, the ALJ provided sufficient reasons for rejecting the non-lifting-related

05  limitations assessed by Dr. Stern.  Nor does plaintiff proffer any plausible theory as to how his

06  combined impairments are medically equivalent to the criteria for a listed impairment, let alone

07  meet his burden of establishing medical equivalence.  *See Burch*, 400 F.3d at 683 ("An ALJ is not

08  required to discuss the combined effects of a claimant's impairments or compare them to any

09  listing in an equivalency determination, unless the claimant presents evidence in an effort to

10  establish equivalence."); *Lewis*, 236 F.3d at 514 (noting that plaintiff "offered no theory, plausible

11  or otherwise, as to" how his combined impairments equaled a listing).  Finally, the ALJ's alleged

12  boilerplate statement is sufficient given the support provided by the evaluation of the medical

13  evidence.  *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) ("It is unnecessary to

14  require the Secretary, as a matter of law, to state why a claimant failed to satisfy every different

15  section of the listing of impairments.  The Secretary's four page 'evaluation of the evidence' is an

16  adequate statement of the 'foundations on which the ultimate factual conclusions are based.'")

17  (quoted sources omitted).  For these reasons, the ALJ's step three decision is supported by

18  substantial evidence and should be upheld.

19                                 Medical-Vocational Guidelines

20          An ALJ may rely on the Medical-Vocational Guidelines ("guidelines" or "grids") to meet

21  her burden at step five.  *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988).  "They may be

22  used, however, 'only when the grids accurately and completely describe the claimant's abilities and

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -15

01  limitations.'" *Id.* (quoting *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985)). "When a

02  claimant's non-exertional limitations are 'sufficiently severe' so as to significantly limit the range

03  of work permitted by the claimant's exertional limitations, the grids are inapplicable[]" and the

04  testimony of a vocational expert is required. *Id.* (quoting *Desrosiers v. Secretary of Health &*

05  *Human Servs*., 846 F.2d 573, 577 (9th Cir. 1988)).  *Accord Tackett v. Apfel*, 180 F.3d 1094,

06  1103-04 (9th Cir. 1999) ("Because Tackett's non-exertional limitations 'significantly limit the

07  range of work' he can perform, mechanical application of the grids was inappropriate.")

08       Plaintiff states that the ALJ found mental and physical severe impairments imposing

09  significant exertional and nonexertional limitations on his ability to perform basic work-related

10  activities. ( *See* AR 24, 27.)  *See also* 20 C.F.R. §§ 404.1521, 416.921 ("An impairment or

11  combination of impairments is not severe if it does not significantly limit your physical or mental

12  ability to do basic work activities.")  He asserts that the ALJ, therefore, erred in mechanically

13  applying the grids at step five.  He further argues error in the grids as applied, noting that the ALJ

14  erroneously concluded he had a GED education and relied on guideline rules requiring a high

15  school or better education.  (*See* AR 29 (finding plaintiff had a GED education and applying rules

16  202.20 and 202.13 from 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 2.))

17       Plaintiff fails to demonstrate reversible error at step five.  As argued by defendant: "[T]he

18  fact that a non-exertional limitation is alleged does not automatically preclude application of the

19  grids. The ALJ should first determine if a claimant's non-exertional limitations significantly limit

20  the range of work permitted by his exertional limitations." *Desrosiers*, 846 F.2d at 577 ("It is not

21  necessary to permit a claimant to circumvent the guidelines simply by alleging the existence of a

22  non-exertional impairment, such as pain, validated by a doctor's opinion that such impairment

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -16

01 | exists. To do so frustrates the purpose of the guidelines.")  *See also Razey v. Heckler*, 785 F.2d

02 | 1426, 1431 (9th Cir. 1986) ("The regulations do not, however, preclude the use of the grids when

03 | a nonexertional limitation is alleged. They explicitly provide for the evaluation of claimants

04 | asserting both exertional and nonexertional limitations. [20 C.F.R. Pt. 404, Subpt. P, App. 2] at

05 | § 200.00(e). The Appeals Council found that the claimed nonexertional limitations did not so

06 | affect Razey's residual capacity that the use of the grids was inappropriate. Both the Secretary's

07 | regulation and our decision in *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983), allow the use

08 | of the grids under these circumstances."),  *modified* at 794 F.2d 1348 (1986); and SSR 83-14

09 | ("Nonexertional impairments may or may not significantly narrow the range of work a person can

10 | do."; "Where it is clear that the additional limitation or restriction has very little effect on the

11 | exertional occupational base, the conclusion directed by the appropriate rule in Tables No. 1, 2,

12 | or 3 would not be affected.")

13 |       In this case, in addition to exertional limitations allowing plaintiff to perform light work,

14 | the ALJ assessed plaintiff's RFC as follows:

15 |       A longitudinal view of the medical evidence of record supports a finding that the claimant functions mentally at a level necessary to perform basic work activity, in that

16 | he retains the mental ability to understand, remember, and carry out simple instructions; to make simple work-related decisions necessary to function in unskilled

17 | work; to respond appropriately to supervisors, coworkers, and usual work situations; and to deal with changes in a routine work setting not dealing [with] the general

18 | public.

19 | (AR 27.)  She found this assessment supported by the consultative examination of Dr. Parlatore,

20 | who noted "only 'slight' limitations" in the ability to respond appropriately to work pressures or

21 | changes.  (AR 28 & 357.)

22 |       The ALJ acknowledged the limitation on the use of the grids with respect to a combination

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -17

01  of exertional and nonexertional impairments. ( *See* AR 29 ("But when the claimant has a

02  combination of exertional and nonexertional limitations, the applicable rule does not direct a

03  decision, but instead serves as a guide to determine whether the claimant is disabled.")) However,

04  she nonetheless found the grids applicable upon concluding that the nonexertional limitations

05  described above did not erode the light and sedentary occupational base.  (AR 30.)  Plaintiff fails

06  to demonstrate any error in this assessment.

07      Further, although the ALJ did err in assuming plaintiff had a GED and applying grid rules

08  requiring at least a high school education, the Court agrees with defendant that this error was

09  harmless.  *See*, *e.g.*, *Batson v. Commissioner of the Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th

10  Cir. 2004) (applying harmless error standard to assumption made by ALJ); *Matthews v. Shalala*,

11  10 F.3d 678, 681 (9th Cir. 2003) (applying harmless error standard in assessing omission of

12  information from hypothetical to vocational expert).  Application of grid rules 202.10 and 202.17

13  (for individuals with less than a high school education), instead of 202.20 and 202.13 (for high

14  school graduates or more) as applied by the ALJ, would apply here and still compel a finding of

15  "not disabled."  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2.

16      In sum, the ALJ properly relied on the guidelines in this case at step five and her factual

17  error was harmless.  The ALJ's step five decision is, therefore, supported by substantial evidence

18  and should be affirmed.

19  / / /

20  / / /

21  / / /

22  / / /

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -18

01

## <u>CONCLUSION</u>

02    For the reasons set forth above, the Commissioner's decision should be AFFIRMED.

03    DATED this <u>5th</u> day of April, 2007.

04

05    Mary Alice Theiler
      United States Magistrate Judge

06

07

08

09

10

11

12

13

14

15

16

17

18

19

20

21

22

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -19